# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| COUNTRY LIFE HOMES, LLC; HEARTHSTONE MANOR I, LLC; HEARTHSTONE MANOR II, LLC; RIVER ROCK, LLC; KEY PROPERTIES GROUP, LLC; CEDAR CREEK LANDING CAMPGROUND, LLC; MBT LAND HOLDINGS, LLC; ELMER FANNIN; and MARY ANN FANNIN, | § § § § § § § § § § § | No.   401, 2020

Court Below:   Superior Court of the State of Delaware

C.A. No. N19C-03-228 |
| Defendants/Counterclaim Plaintiffs-Below, Appellants, | § § § § § | |
| v. | § § § | |
| GELLERT SCALI BUSENKELL & BROWN, LLC, | § § § § | |
| Plaintiff/Counterclaim Defendant-Below, Appellee. | § § § § | |

Submitted:   June 9, 2021
Decided:   August 16, 2021

Before **SEITZ**, Chief Justice; **VAUGHN** and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court.   **REVERSED** and **REMANDED**.

Patrick K. Gibson, Esquire, Ippoliti Law Group, Wilmington, Delaware, for Appellants, Country Life Homes, LLC, Hearthstone Manor I, LLC, Hearthstone Manor II, LLC, River Rock, LLC, Key Properties Group, LLC, Cedar Creek

Landing Campground, LLC, MBT Land Holdings, LLC, Elmer Fannin, and Mary Ann Fannin.

Carol A. Vanderwoude, Esquire (*Argued*), Marshall Dennehey Warner Coleman & Goggin, P.C., Philadelphia, Pennsylvania, and Art C. Aranilla, Esquire, Marshall Dennehey Warner Coleman & Goggin, P.C., Wilmington, Delaware, for Appellee, Gellert Scali Busenkell & Brown, LLC.

**VAUGHN**, Justice:

The Appellants in this appeal are seven limited liability companies and two individuals. The individuals, Elmer and Mary Fannin, are the principal owners of the seven LLCs. The Appellants will be collectively referred to in the singular as "Country Life," after the name of the LLC which is listed first in the caption. The Appellee, Gellert Scali Busenkell & Brown, LLC ("GSBB"), is a law firm having offices in Wilmington, Delaware. Country Life appeals from a Superior Court order dismissing its legal malpractice claim against GSBB under Superior Court Civil Rule 12(b)(6). For the reasons that follow, we believe Country Life's claim is adequately pled and the Superior Court's order must be reversed.

## FACTS AND PROCEDURAL HISTORY

Country Life is engaged in the business of residential real estate development in Sussex County. For many years, Delaware National Bank provided commercial loans and lines of credit to Country Life to assist in the operation of its real estate projects. Delaware National Bank merged with Fulton Bank, N.A. ("Fulton"), after which Fulton and Country Life carried on the same lender-debtor relationship as had existed between Delaware National Bank and Country Life.

On March 1, 2016, Country Life retained GSBB to represent it in restructuring its loans with Fulton. The restructuring efforts were unsuccessful, and beginning in November of 2016, Fulton filed civil actions against Country Life in the Superior Court seeking payment of approximately $6.6 million in unpaid loans ("the

3

underlying actions"). Country Life retained GSBB to represent its interests in the civil actions. GSBB defended Country Life in the suits brought by Fulton and filed two Superior Court actions against Fulton on behalf of Country Life ("the Country Life actions"). The Country Life actions sought a declaratory judgment that Country Life owed Fulton only about $3 million, not the approximately $6.6 million claimed by Fulton. They also asserted claims for breach of contract and breach of the covenant of good faith and fair dealing, alleging that Fulton's dealings with Country Life had harmed its businesses.

In September 2018, Country Life terminated the services of GSBB and retained the law firm of Ashby & Geddes, P.A. to represent it in all the Fulton litigation. Three months later, in December 2018, Country Life and Fulton agreed to a settlement as the result of a mediation conducted by a Superior Court Commissioner under which Country Life agreed to pay the full amount claimed by Fulton in the approximate amount of $6.7 million.

On or about March 22, 2019, GSBB sued Country Life for unpaid legal fees in the amount of $124,601.58 plus interest and costs. Country Life filed a counterclaim asserting legal malpractice against GSBB. Among the averments in the counterclaim are allegations that GSBB "goaded [Country Life] to fight Fulton – greatly exaggerating the likelihood of a successful outcome" in the actions filed by Fulton; that litigating the actions filed by Country Life against Fulton was "a

4

waste of time and precious financial resources[;]" and that "[o]ne key issue that [GSBB] largely ignored was the fact that [Country Life] would be responsible for paying Fulton's legal expenses if they successfully prosecuted the Fulton Actions."[1] Another matter alleged in the counterclaim was that GSBB commissioned an accounting firm, Gavin/Solmonese, LLC ("G/S") "to review the underlying loan documents from Fulton and to prepare a comprehensive report intended to establish that Fulton in fact owed monies to [Country Life]."[2] This report, it is alleged, "was in fact deeply flawed and predicated on faulty assumptions, hindering its utility in assisting in litigating the Underlying Actions."[3]

The counterclaim alleges that GSBB deviated from the "applicable standard of care expected of an ordinarily prudent Delaware lawyer engaged in the practice of commercial litigation, via the following negligent actions and/or omissions:"

> Failing to accurately identify the weakness of [Country Life's] claims and defenses in the Underlying Actions;
>
> Failing to advise [Country Life] of the likelihood that Fulton would prevail in the Fulton Actions, and advising [Country Life] to fight Fulton – greatly exaggerating the likelihood of a successful outcome in the Underlying Actions;
>
> Failing to correctly advise [Country Life] that the proper course of action was to strategically attempt an early settlement with Fulton – on terms as favorable to [Country Life] as possible;

---

[1] App. to Appellant's Op. Br. at A048-49 [hereinafter A__].
[2] A048.
[3] *Id*.

> Misrepresenting the strength of the G/S Report to [Country Life];
>
> Failing to correctly advise [Country Life] that their claims and defenses in the Underlying Actions were very weak and any overpayments to Fulton would be vastly surpassed by sums legitimately owed to Fulton; and
>
> Advising [Country Life] to file the Country Life Action[s], [actions] with no real possibility of success.[4]

The counterclaim alleges that GSBB's negligence proximately caused Country Life to suffer the following damages: "(i) $393,151.04 in attorneys' fees, needlessly paid to [GSBB]; (ii) $334,201.73 needlessly paid for the G/S Report; and (iii) $823,633.00 for Fulton's attorneys' fees and litigation expenses."[5]

GSBB responded by filing a motion to dismiss Country Life's counterclaim pursuant to Superior Court Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In support of its motion to dismiss, GSBB made the following argument: In order for the plaintiff to establish damages in a legal malpractice case involving an underlying legal action, the plaintiff must prove that but for the attorney's negligence, the plaintiff would have been successful in prosecuting or defending the action. "[Country Life] must prove the bright-line rule that they were caused to lose a judgment as a result of the attorney's conduct."[6]

---

[4] A053.
[5] A054.
[6] A125.

6

Since Country Life could not prove that it would have been successful in the underlying action but for GSBB's negligence, the counterclaim must fail. Any lesser standard, it argued, could lead to multiple problems, such as oppressive lawsuits by disgruntled clients alleging that the attorney should have recommended and facilitated a settlement prior to trial and speculative claims of damages. In this case, Country Life did not allege that it would have been successful in the Fulton Bank actions and its own actions but for the alleged negligence of GSBB. In fact, it argued that it had no reasonable possibility of prevailing in any of the actions. Therefore, GSBB argued, the counterclaim should be dismissed.

The Superior Court accepted GSBB's argument and dismissed the counterclaim with prejudice. The following paragraph from the court's ruling fairly represents its reasoning:

> Fatal to the claims is that the Defendants cannot establish that the underlying action would have been successful but for the attorney's negligence or that Plaintiff's alleged conduct caused them to lose any of the underlying Fulton actions. These civil actions settled by agreement of the parties through mediation. Defendants' claims would improperly require speculation as to what happened during these settlement negotiations. Thus, damages are also speculative.[7]

## STANDARD OF REVIEW

---

[7] *Gellert Scali Busenkell & Brown, LLC v. Country Life Homes, LLC*, 2019 WL 6876805, at \*3 (Del. Super. Dec. 16, 2019).

This Court reviews a decision to grant a motion to dismiss under Rule 12(b)(6) *de novo* "to determine whether the trial judge erred as a matter of law in formulating or applying legal precepts."[8] We must accept all well-pleaded allegations as true and draw reasonable inferences in favor of the plaintiff.[9] "Nevertheless, conclusory allegations need not be treated as true, nor should inferences be drawn unless they truly are reasonable."[10] "Dismissal is appropriate only if it appears with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief."[11]

## DISCUSSION

"It is settled law in Delaware that to prevail on a legal negligence claim, the plaintiff must establish three elements: 'a) the employment of the attorney; b) the attorney's neglect of a professional obligation; and c) resulting loss.'"[12] "Moreover, it is well-settled that expert testimony is necessary to support a claim of legal malpractice, except in those cases where the attorney's mistakes are so obvious that such testimony is not required."[13]

---

[8] *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) (internal quotation marks omitted).
[9] *Feldman v. Cutaia*, 951 A.2d 727, 731 (Del. 2008).
[10] *Id.*
[11] *Clinton*, 977 A.2d at 895 (internal quotation marks omitted).
[12] *Sherman v. Ellis*, 246 A.3d 1126, 1131 (Del. 2021) (en banc) (quoting *Oakes v. Clark*, 2013 WL 3147313, at *1 (Del. June 18, 2013) (TABLE)).
[13] *Oakes v. Clark*, 2013 WL 3147313, at *1 (Del. Jun. 18, 2013) (TABLE) (citing *Bett v. Berkowitz*, 706 A.2d 509, 517-518 (Del. 1998)).

Some claims of legal negligence occur where a plaintiff alleges that a meritorious cause of action was lost because of negligence on the part of the attorney. In a claim of that nature, sometimes referred to as a "loss of judgment" claim, "the plaintiff must demonstrate that the underlying action would have been successful but for the attorney's negligence."[14]  The plaintiff must prevail in a "trial within a trial." Our cases of *Oakes v. Clark*[15] and *Flowers v. Ramunno*[16] are of this nature.  GSBB argued in the Superior Court, and argues here, that this principle applies in this case and Country Life's claim has no merit because Country Life cannot demonstrate that GSBB caused it to lose the underlying actions and the Country Life actions.  The theory of Country Life's claim, however, is not that GSBB caused it to lose the underlying actions or the Country Life actions.  Country Life claims that the defenses asserted by GSBB in the underlying actions and the claims asserted in the Country Life actions lacked merit to begin with.

Other claims of legal negligence occur in the transactional setting, where a plaintiff claims that loss was suffered because of an attorney's negligence in such matters as the drafting of an agreement, a real estate transaction, or a business transaction.  Our recent case of *Sherman v. Ellis* is such a case.[17]  The cases of

---

[14] *Oakes*, 2013 WL 3147313 at *1 (citation omitted).
[15] 2013 WL 3147313 (Del. Jun. 18, 2013) (TABLE).
[16] 2011 WL 3592966 (Del. Aug. 16, 2011) (TABLE).
[17] 246 A.3d 1126 (Del. 2021) (en banc).

*Dickerson v. Murray*[18] and *Beneville v. Pileggi*[19] are other examples of alleged negligence in the transactional setting.

Legal malpractice claims, however, are not confined to the "loss of judgment" setting or the transactional setting. A plaintiff may allege that an attorney's negligence caused damage in some other way. That is the case here. The gist of Country Life's claim is that GSBB was negligent in advising and inducing it to mount vigorous defenses that lacked merit in the underlying actions and to file the Country Life actions even though they lacked merit. It alleges that GSBB's negligence caused it to suffer damages in the form of increased litigation expenses which it has identified in its counterclaim, expenses which exceed the litigation expenses that would have been incurred but for the alleged negligence of GSBB.

We think that for pleading purposes, Country Life's claim satisfies each of the three elements of a legal malpractice claim, that is, employment of the attorney, attorney negligence, and resulting loss. Country Life's claim should not have been dismissed and Country Life should be permitted to proceed beyond the pleading stage.

## CONCLUSION

For the foregoing reasons, the Superior Court's dismissal of Country Life's

---

[18] 2016 WL 1613286 (Del. Mar. 24, 2016).
[19] 2004 WL 758038 (D. Del. Apr. 2, 2004).

counterclaim is, therefore, reversed and the matter is remanded for further proceedings consistent with this opinion.